1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    MAHER CONRAD SUAREZ,                   Case No. 15-cv-05756-HSG

           Plaintiff,

8                                          ORDER OF PARTIAL SERVICE;
          v.                               DISMISSING CERTAIN DEFENDANTS
9                                          WITH LEAVE TO AMEND; DENYING
     JEFFREY BEARD, et al.,                REQUEST FOR APPOINTMENT OF
10                                         COUNSEL
           Defendants.
11                                         Dkt. Nos. 4

12

13        Plaintiff, a California prisoner incarcerated at California State Prison – Solano, filed this

14   *pro se* civil rights action under 42 U.S.C. § 1983, claiming that prison officials violated his

15   constitutional rights when he was previously housed at Pelican Bay State Prison ("PBSP").

16   Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order.  His complaint is

17   now before the Court for review under 28 U.S.C. § 1915A.

18                                  **DISCUSSION**

19   **A.    Standard of Review**

20        A federal court must conduct a preliminary screening in any case in which a prisoner seeks

21   redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

22   § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims

23   that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek

24   monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),

25   (2).  *Pro se* pleadings must, however, be liberally construed.  *See Balistreri v. Pacifica Police

26   Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

27        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

28   claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Specific facts are not

United States District Court
Northern District of California

1    necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the

2    grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and internal

3    quotations omitted).  Although in order to state a claim a complaint "does not need detailed factual

4    allegations, . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief'

5    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

6    action will not do. . . .   Factual allegations must be enough to raise a right to relief above the

7    speculative level." *Bell Atlantic Corp. v. Twombly*,  550 U.S. 544, 555 (2007) (citations omitted).

8    A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.*

9    at 570.

10           To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

11   (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that

12   the alleged violation was committed by a person acting under the color of state law.  *See West v.*

13   *Atkins*, 487 U.S. 42, 48 (1988).

14   **B.       Legal Claims**

15           From August 2, 2015 to December 21, 2015, Plaintiff was housed in PBSP SHU, C-Yard,

16   Eleven Block, E pod, Cell 219.  Docket No. 1 ("Compl.") at 10.

17           According to the complaint, the California Department of Corrections and Rehabilitation

18   ("CDCR") recently instituted security/welfare checks in all administrative segregation units

19   ("ASUs"), psychiatric service units ("PSUs"), security housing units ("SHUs"), and condemned

20   housing units.  *Id.* at 5.  On August 2, 2105, the security/welfare checks started at PBSP SHU.

21   Plaintiff alleges that these security/welfare checks create "excessive noise," and cause Plaintiff to

22   suffer "from general sleep deprivation and adverse effects," in violation of his Eighth Amendment

23   right to be free from cruel and unusual punishment.  *Id.* at 5 and 10.

24           The security/welfare checks take place every thirty minutes and result in excessive and

25   loud noise that lasts between ten to fifteen minutes each time.  Compl. at 11–13.  The noise

26   prevents Plaintiff from sleeping for longer than thirty minutes, and has resulted in Plaintiff being

27   constantly exhausted; being unable to think, focus, or function normally; having a clouded mind;

28   having severe headaches, dizzy spells, and body pains; being stressed; and being depressed.  *Id.* at

United States District Court
Northern District of California

2

1     13–14.

2          To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

3     conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*,

4     452 U.S. 337, 347 (1981).  A prison official violates the Eighth Amendment when two

5     requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2)

6     the prison official possesses a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S.

7     825, 834 (1994).

8          The Ninth Circuit has held that public conceptions of decency inherent in the Eighth

9     Amendment require that inmates be housed in an environment that is reasonably free of excessive

10    noise.  *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *amended* 135 F.3d 1318 (9th Cir.

11    1998) (quoting *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1397, 1410 (N.D. Cal. 1984), *aff'd in*

12    *part, rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)) (plaintiff's allegations

13    that, for six months in a maximum security cell, "at all times of day and night inmates were

14    'screaming, wailing, crying, signing and yelling,' often in groups, and that there was a 'constant,

15    loud banging'" were sufficient to defeat defendants' summary judgment motion).  Liberally

16    construed, Plaintiff's allegations regarding the excessive noise caused by the security/welfare

17    checks state a cognizable Eighth Amendment claim.  The question is whether Plaintiff's

18    allegations state a claim that each named defendant caused the alleged constitutional violation.

19    **C.     Defendants**

20         Plaintiff has named seventy-six CDCR prison officials as defendants.  He has named the

21    following CDCR administrative officials:  Jeffrey Beard, CDCR Secretary; Michael Stainer,

22    Director of the Adults Institutions Division; Kelly Harrington, CDCR Director of the Adults

23    Institutions Division; M. Voong, CDCR Chief of the Office of Appeals; and T. Lee, CDCR

24    Appeals Examiner.  He has also named the following PBSP administrative officials: Warden C. E.

25    Ducart; Associate Warden R. Bell; Chief Deputy Administrator T.E. Puget; Captain D. Melton;

26    Captain C. Parry; Lieutenant S. Bradley; Lieutenant J. Harlan; Sergeant J. Silva; Sergeant V.

27    Crandall; Sergeant Northrup; Sergeant Drowner; and Sergeant Dayton (or Dalton).  He has also

28    named the following PBSP correctional officers: Healy, Partida, Lee, Davis, Shafter, Rosalez,

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    Flud, Wilks, Francisco, Rodriguez, Kreth, Mattingly, Durham, Chavez, Maldando, Contreras,

2    Yancy, Garcia, Anaya, Bolten, Bower, Pennington, Moua, Cavazos, Ysiano, Anguilo, Tucker,

3    Gomez, Whiteside, Bradford, Skraggs, Kennosen, Love, Hendrix, Gibbons, Miller, Johnson,

4    Tunnel, Crowwell, Grady, Saragh, Kellog, Fernandez, Hughley, Coulson, Casaca, Ram, Joseph,

5    Adaza, Brake, Cuasay, Broom, Mendoza, Sanchez, Hayes, Bumbee (or Bumby), Rivera, Reed,

6    and Hurley.

7           The Court evaluates whether Plaintiff has stated a claim against each individual defendant.

8           Plaintiff alleges that, upon information and knowledge, Secretary Beard, Director Stainer,

9    Director Harrington, PBSP Warden Ducart, PBSP Associate Warden Bell, PBSP Chief Deputy

10   Administrator Puget, PBSP Capt. Melton, PBSP Capt. Parry, PBSP Lt. Bradley, PBSP Lt. Harlan,

11   PBSP Sgt. Silva, PBSP Sgt. Crandall, PBSP Sgt. Northrup, PBSP Sgt. Drowner, and PBSP Sgt.

12   Dayton (or Dalton) were aware of the adverse effects of the security/welfare checks because PBSP

13   was the last CDCR facility to institute security/welfare checks and because complaints had been

14   filed by inmates in other prisons that alleged that the security/welfare checks created excessive

15   noise.  Compl. at 17.  Plaintiff further alleges that, despite this knowledge, these defendants failed

16   to address the unconstitutional effects of the security/welfare checks, including failing to properly

17   train, supervise, and control the correctional officers carrying out the security/welfare checks.  *Id.*

18          There is no respondeat superior liability under § 1983, i.e. no liability under the theory that

19   one is liable simply because he employs a person who has violated a plaintiff's rights.  *See Taylor*

20   *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor may be liable under section 1983 upon

21   a showing of (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal

22   connection between the supervisor's wrongful conduct and the constitutional violation.  *See Starr*

23   *v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  A supervisor therefore generally "is only liable for

24   constitutional violations of his subordinates if the supervisor participated in or directed the

25   violations, or knew of the violations and failed to act to prevent them."  *Taylor*, 880 F.2d at 1045.

26          Plaintiff's assumption that other inmates had filed similar complaints about the

27   security/welfare checks and that Secretary Beard, Director Stainer, Director Harrington, PBSP

28   Warden Ducart, PBSP Associate Warden Bell, PBSP Chief Deputy Administrator Puget, PBSP

4

1   Capt. Melton, PBSP Capt. Parry, PBSP Lt. Bradley, PBSP Lt. Harlan, PBSP Sgt. Silva, PBSP Sgt.

2   Crandall, PBSP Sgt. Northrup, PBSP Sgt. Drowner, and PBSP Sgt. Dayton (or Dalton) were

3   aware of such complaints is insufficient to establish that these defendants were personally

4   involved in the constitutional deprivation, or that these defendants engaged in wrongful conduct

5   that led to the constitutional deprivation.  Director Stainer, Director Harrington, PBSP Warden

6   Ducart, PBSP Associate Warden Bell, PBSP Chief Deputy Administrator Puget, and PBSP Capt.

7   Parry are therefore DISMISSED from this action with leave to amend.  If Plaintiff chooses to filed

8   an amended complaint and again name as defendants Director Stainer, Director Harrington, PBSP

9   Warden Ducart, PBSP Associate Warden Bell, PBSP Chief Deputy Administrator Puget, and

10  PBSP Capt. Parry, he must plead facts indicating that these defendants were "personally involved

11  in the deprivation of his civil rights," if Plaintiff can truthfully do so.  *Barren v. Harrington*, 152

12  F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show

13  that an individual was personally involved in the deprivation of his civil rights.").

14          However, Secretary Beard, PBSP Capt. Melton, PBSP Lt. Bradley, PBSP Lt. Harlan,

15  PBSP Sgt. Silva, PBSP Sgt. Crandall, PBSP Sgt. Northrup, PBSP Sgt. Drowner, and PBSP Sgt.

16  Dayton (or Dalton) are not dismissed from this action because, as discussed below, Plaintiff has

17  made additional allegations against them that are sufficient to state a § 1983 claim against them.

18          On August 3, 2015, Plaintiff submitted a CDCR 22 Request for Interview to PBSP Sgt.

19  Silva, complaining about the noise generated by the security/welfare checks and requesting that

20  the checks stop.  Compl. at 18.  Sgt. Silva refused to stop the security/welfare checks and

21  responded that the correctional officers were performing their duties as set forth in a July 15, 2015

22  memo.  *Id.*  Plaintiff appealed Sgt. Silva's response to Lt. Bradley, who also refused to stop the

23  security/welfare checks.  *Id.*

24          On September 10, 2105, Plaintiff sent a letter to CDCR Secretary Beard, informing him of

25  the noise caused by the security/welfare checks and requesting that the checks stop.  *Id.* at 19.

26          On October 28, 2015, Plaintiff sent a CDCR 22 Inmate Request for Interview to Sgt.

27  Crandall, informing him of the adverse effects of the security/welfare checks and requesting that

28  the checks stop.  Compl. at 19.  Sgt. Crandall refused to stop the checks and stated that prison staff

United States District Court
Northern District of California

5

1    were conducting security/welfare checks in accordance with policies and procedures set forth by

2    PBSP Warden Ducart.  *Id.*  On November 1, 2015, Plaintiff appealed Sgt. Crandall's response to

3    Lt. Harlan.  Lt. Harlan responded that the security/welfare checks would be continued and that

4    prison officials were available to address Plaintiff's physical and mental health issues.  *Id.*

5    On November 4, 2015, Plaintiff sent a CDCR 22 Inmate Request for Interview to Capt.

6    Melton, informing him of the adverse effects of the security/welfare checks and requesting that the

7    checks stop.  Compl. at 19.  Lt. Bradley responded to the CDCR 22.  Lt. Bradley refused to stop

8    the checks and stated that prison staff were conducting security/welfare checks in accordance with

9    orders from outside PBSP.  *Id.*  Plaintiff appealed Lt. Bradley's response and on November 12,

10   2015, Capt. Melton responded by stating that the security/welfare checks were mandated by

11   Director Stainer, and refused to stop the checks.  *Id.*  Plaintiff appealed this response and, on

12   November 17, 2015, Chief Voong and Appeals Examiner Lee responded and denied Plaintiff's

13   request to end the security/welfare checks.  *Id.* at 20.

14   On November 17, 2015, Plaintiff sent a CDCR 22 Inmate Request for Interview to Chief

15   Deputy Administrator Puget,[1] informing him of the adverse effects of the security/welfare checks

16   and requesting that the checks stop.  Compl. at 20.  This CDCR 22 was blocked by Sgt. Molina as

17   a duplicate issue that had already been addressed.  *Id.*  Plaintiff sought a supervisor's review.  Lt.

18   Bradley responded and "put the blame at the directors level and took no action."  *Id.*

19   From September 10, 2015 through December 3, 2015, the following PBSP sergeants and

20   correctional officers conducted their security/welfare checks in a manner that "directly caused and

21   contributed to the denial of sleep and excessive loud noise": sergeants Northrup, Drowner, and

22   Dayton (or Dalton); and correctional officers Healy, Partida, Lee, Davis, Shafter, Rosalez, Flud,

23   Wilks, Francisco, Rodriguez, Kreth, Mattingly, Durham, Chavez, Maldando, Contreras, Yancy,

24   Garcia, Anaya, Bolten, Bower, Pennington, Moua, Cavazos, Ysiano, Anguilo, Tucker, Gomez,

25   Whiteside, Bradford, Skraggs, Kennosen, Love, Hendrix, Gibbons, Miller, Johnson, Tunnel,

26   Crowwell, Grady, Saragh, Kellog, Fernandez, Hughley, Coulson, Casaca, Ram, Joseph, Adaza,

27

28   [1] Presumably Chief Deputy Administrator Puget never received the CDCR 22 since it was blocked by Sgt. Molina.

United States District Court
Northern District of California

6

1   Brake, Cuasay, Broom, Mendoza, Sanchez, Hayes, Bumbee (or Bumby), Rivera, Reed, and

2   Hurley.

3        Liberally construed, Plaintiff's allegations state an Eighth Amendment claim against the

4   following defendants: Secretary Beard, PBSP captain Melton, PBSP lieutenants Bradley, and

5   Harlan; PBSP sergeants Silva, Crandall, Northrup, Drowner, and Dayton (or Dalton); and

6   correctional officers Healy, Partida, Lee, Davis, Shafter, Rosalez, Flud, Wilks, Francisco,

7   Rodriguez, Kreth, Mattingly, Durham, Chavez, Maldando, Contreras, Yancy, Garcia, Anaya,

8   Bolten, Bower, Pennington, Moua, Cavazos, Ysiano, Anguilo, Tucker, Gomez, Whiteside,

9   Bradford, Skraggs, Kennosen, Love, Hendrix, Gibbons, Miller, Johnson, Tunnel, Crowwell,

10   Grady, Saragh, Kellog, Fernandez, Hughley, Coulson, Casaca, Ram, Joseph, Adaza, Brake,

11   Cuasay, Broom, Mendoza, Sanchez, Hayes, Bumbee (or Bumby), Rivera, Reed, and Hurley.

**D.   Doe Defendants**

13        Plaintiff names 16 Doe defendants.  He states that he does not know their names, but

14   identifies them by the date and time of their shift.  Compl at 14–17.  The use of Doe defendants is

15   not favored in the Ninth Circuit.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

16   Using a Doe defendant designation creates its own problem: that person cannot be served with

17   process until he or she is identified by his or her real name.  Where the identity of alleged

18   defendants cannot be known prior to the filing of a complaint the plaintiff should be given an

19   opportunity through discovery to identify them.  *Id.*  Failure to afford the plaintiff such an

20   opportunity is error.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

21   Accordingly, the Doe defendants are DISMISSED from this action without prejudice.  Should

22   Plaintiff learn their identities, he may move to file an amendment to the complaint to add them as

23   named defendants.  *See Brass v. County of Los Angeles*, 328 F.3d 1192, 1195–98 (9th Cir. 2003).

24   The burden to determine the identity of the Doe defendants is on Plaintiff; the Court will not

25   undertake to investigate the names and identities of unnamed defendants.

**D.   Motion to Appoint Counsel**

27        Plaintiff has requested that counsel be appointed to assist him in this action.  A district

28   court has the discretion under 28 U.S.C. § 1915(e)(1) to designate counsel to represent an indigent

United States District Court
Northern District of California

1    civil litigant in exceptional circumstances.  *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th

2    Cir. 1986).  This requires an evaluation of both the likelihood of success on the merits and the

3    ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues

4    involved.  *See id.*  Neither of these factors is dispositive and both must be viewed together before

5    deciding on a request for counsel under § 1915(e)(1).  Here, exceptional circumstances requiring

6    the appointment of counsel are not evident. The request for appointment of counsel is DENIED.

7    Docket No.  4.

8                                                **CONCLUSION**

9            For the foregoing reasons, the Court orders as follows:

10           1.        Plaintiff's request for appointment of counsel is DENIED.  Docket No. 4.

11           2.        Director Stainer, Director Harrington, PBSP Warden Ducart, PBSP Associate

12   Warden Bell, PBSP Chief Deputy Administrator Puget, and PBSP Captain Parry are DISMISSED

13   from this action with leave to amend.  If Plaintiff choses to amend his claims against Director

14   Stainer, Director Harrington, PBSP Warden Ducart, PBSP Associate Warden Bell, PBSP Chief

15   Deputy Administrator Puget, and PBSP Captain Parry, he must file an amended complaint within

16   thirty (30) days of this order.  The pleading must be simple and concise and must include the

17   caption and civil case number used in this order (15-5756 HSG (PR)) and the words AMENDED

18   COMPLAINT on the first page.  The Clerk of the Court shall send Plaintiff a blank civil rights

19   form along with his copy of this order.

20           Plaintiff is advised that because an amended complaint completely replaces the previous

21   complaints, Plaintiff must include in his amended complaint all the claims he wishes to present

22   and all of the defendants he wishes to sue, including the claims that have been found cognizable

23   and the defendants that have been ordered served.  *See*, *e.g.*, *Ferdik v. Bonzelet*, 963 F.2d 1258,

24   1262 (9th Cir. 1992).

25           If Plaintiff fails to file a proper amended complaint within the designated time, the initial

26   complaint (Docket No. 1) shall continue as the operative complaint, and this instant action will

27   proceed against the defendants served below.

28           3.        The Clerk of the Court shall issue summons and the United States Marshal shall

United States District Court
Northern District of California

United States District Court
Northern District of California

1    serve, without prepayment of fees, a copy of the complaint (Docket No. 1), and a copy of this

2    order upon the following defendants: **Secretary Beard, PBSP captain Melton, PBSP lieutenants**

3    **Bradley and Harlan; PBSP sergeants Silva, Crandall, Northrup, Drowner, and Dayton (or**

4    **Dalton); and correctional officers Healy, Partida, Lee, Davis, Shafter, Rosalez, Flud, Wilks,**

5    **Francisco, Rodriguez, Kreth, Mattingly, Durham, Chavez, Maldando, Contreras, Yancy,**

6    **Garcia, Anaya, Bolten, Bower, Pennington, Moua, Cavazos, Ysiano, Anguilo, Tucker,**

7    **Gomez, Whiteside, Bradford, Skraggs, Kennosen, Love, Hendrix, Gibbons, Miller, Johnson,**

8    **Tunnel, Crowwell, Grady, Saragh, Kellog, Fernandez, Hughley, Coulson, Casaca, Ram,**

9    **Joseph, Adaza, Brake, Cuasay, Broom, Mendoza, Sanchez, Hayes, Bumbee (or Bumby),**

10   **Rivera, Reed, and Hurley at Pelican Bay State Prison, P.O. Box 7500, Crescent City, CA**

11   **95532**.  The Clerk shall also mail a courtesy copy of the complaint and this order to the California

12   Attorney General's Office.

13        4.        In order to expedite the resolution of this case, the Court orders as follows:

14        a.        No later than **91 days** from the date this Order is filed, defendants must file

15   and serve a motion for summary judgment or other dispositive motion.  If defendants are of the

16   opinion that this case cannot be resolved by summary judgment, defendants must so inform the

17   Court prior to the date the motion is due.  A motion for summary judgment also must be

18   accompanied by a *Rand* notice so that plaintiff will have fair, timely, and adequate notice of what

19   is required of him in order to oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir.

20   2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be

21   served concurrently with motion for summary judgment).  A motion to dismiss for failure to

22   exhaust available administrative remedies similarly must be accompanied by a *Wyatt* notice.

23   *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

24        b.        Plaintiff's opposition to the summary judgment or other dispositive motion

25   must be filed with the Court and served upon defendants no later than **28 days** from the date the

26   motion is filed.  Plaintiff must bear in mind the notice and warning regarding summary judgment

27   provided later in this order as he prepares his opposition to any motion for summary judgment.

28   Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-

9

United States District Court
Northern District of California

1      exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

2                      c.            Defendants **shall** file a reply brief no later than **14 days** after the date the

3      opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No

4      hearing will be held on the motion.

5              5.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the

6      Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must

7      do in order to oppose a motion for summary judgment.  Generally, summary judgment must be

8      granted when there is no genuine issue of material fact – that is, if there is no real dispute about

9      any fact that would affect the result of your case, the party who asked for summary judgment is

10     entitled to judgment as a matter of law, which will end your case.  When a party you are suing

11     makes a motion for summary judgment that is properly supported by declarations (or other sworn

12     testimony), you cannot simply rely on what your complaint says.  Instead, you must set out

13     specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,

14     as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and

15     documents and show that there is a genuine issue of material fact for trial.  If you do not submit

16     your own evidence in opposition, summary judgment, if appropriate, may be entered against you.

17     If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v.*

18     *Rowland,* 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).

19             Plaintiff also is advised that a motion to dismiss for failure to exhaust available

20     administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without

21     prejudice.  You must "develop a record" and present it in your opposition in order to dispute any

22     "factual record" presented by defendants in their motion to dismiss.  *Wyatt v. Terhune*, 315 F.3d

23     1108, 1120 n.14 (9th Cir. 2003).

24             (The *Rand* and *Wyatt* notices above do not excuse defendants' obligation to serve said

25     notices again concurrently with motions to dismiss for failure to exhaust available administrative

26     remedies and motions for summary judgment.  *Woods*, 684 F.3d at 939).

27             6.      All communications by plaintiff with the Court must be served on defendants'

28     counsel by mailing a true copy of the document to defendants' counsel.  The Court may disregard

United States District Court
Northern District of California

1  any document which a party files but fails to send a copy of to his opponent.  Until a defendant's

2  counsel has been designated, plaintiff may mail a true copy of the document directly to the

3  defendant, but once a defendant is represented by counsel, all documents must be mailed to

4  counsel rather than directly to that defendant.

5        7.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure.

6  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required

7  before the parties may conduct discovery.

8        8.     Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the

9  Court informed of any change of address and must comply with the Court's orders in a timely

10  fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant

11  to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every

12  pending case every time he is moved to a new facility.

13        9.     Any motion for an extension of time must be filed no later than the deadline sought

14  to be extended and must be accompanied by a showing of good cause.

15        10.     Plaintiff is cautioned that he must include the case name and case number for this

16  case on any document he submits to the Court for consideration in this case.

17  **IT IS SO ORDERED.**

18  Dated:  4/29/2016

19

20  HAYWOOD S. GILLIAM, JR.
     United States District Judge

21

22

23

24

25

26

27

28