1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAHER CONRAD SUAREZ,

Plaintiff,

v.

JEFFREY BEARD, et al.,

Defendants.

Case No.  15-cv-05756-HSG

**ORDER GRANTING MOTION TO DISMISS CERTAIN CLAIMS; AND DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE TO REFILING**

Re: Dkt. No. 28

Plaintiff, a California prisoner currently incarcerated at California State Prison – Solano ("CSP–Solano"), filed this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that Defendants conducted security/welfare checks at Pelican Bay State Prison ("PBSP"), where he was previously housed, in a manner that constituted cruel and unusual punishment in violation of the Eighth Amendment.  Now pending before the Court is Defendants' motion to dismiss and for summary judgment.  Dkt. No. 28.  For the reasons set forth below, the motion to dismiss is GRANTED and the motion for summary judgment is DENIED without prejudice to refiling.

**BACKGROUND**

The amended complaint makes the following allegations.

During the relevant time period — August 2, 2015 to November 28, 2015[1] — Plaintiff was housed in the Security Housing Unit ("SHU") at PBSP.  Dkt. No. 13 ("Am. Compl.") at 7.

The California Department of Corrections and Rehabilitation ("CDCR") had recently instituted security/welfare checks in all administrative segregation units ("ASUs"), psychiatric services units ("PSUs"), Security Housing Units ("SHUs"), and condemned housing units.  Dkt.

---

[1] Plaintiff's complaint, which initiated this action, is dated November 28, 2015.  Dkt. No. 1.

No. 13 ("Am. Compl.") at 3.  The security/welfare checks are conducted every thirty minutes using the Guard One system, which involves a hand-held "pipe," a metal disc that is attached to each cell door, and a software program.  *Id.* at 3 and 8.  The officer conducting housing unit rounds is required to touch the end of the pipe to the disc on the cell door.  *Id.*  The pipe records the time and location of each security/welfare check.  *Id.*

On August 2, 2015, at 10:00 p.m., security/welfare checks commenced in PBSP SHU.  *Id.* The security/welfare checks cause the following noises, which, according to Plaintiff, make it impossible for inmates, including Plaintiff, to sleep.  Every thirty minutes an alarm sounds in the rotunda of each cell block to remind the floor correctional officers to conduct the security/welfare check.  Am. Compl. at 7.  To enter a pod, the floor correctional officer removes the large metal lock, which is attached to the pod door by a large metal chain; the removal causes a loud sound of metal hitting metal.  *Id.* at 8.  The tower booth correctional officer then remotely opens the pod door for the floor correctional officer, causing a loud mechanical sound as the pod door slams open.  *Id.*  When the correctional officer exits the pod, the pod door slams shut, causing an "extremely loud" sound.  *Id*. at 9.

The pipe makes a long banging sound when the metal pipe hits the metal disc.  Am. Compl. at 8.  This banging sound is even louder when correctional officers intentionally or lazily hit the disc harder than is necessary, and this sound echoes throughout the pods in each cellblock. *Id.*  Sometimes correctional officers hit the buttons multiple times if they initially fail to make proper contact. *Id.*

From 6:00 a.m. to 10:00 p.m., when the pipe makes contact with the disc, it emits a high-pitched piercing beep, which can be heard in neighboring blocks.  Am. Compl. at 8.  During the night hours, 10:00 p.m. to 6:00 a.m., the pipes do not emit sound when they make contact with the disc.  *Id.*  During the night hours, some correctional officers will shine a flashlight into each cell as they conduct the security/welfare check.  *Id.*  It takes correctional officers approximately ten to fifteen minutes to conduct security/welfare checks for each pod.  *Id.* at 10.

In conducting the security/welfare checks, correctional officers ascend and descend a thirteen-step metal staircase, causing a loud stomping sound as the correctional officers' boots

make contact with the metal steps.  Am. Compl. at 9.  In addition, correctional officers carry a lot of equipment on their persons, such as keys, which loudly jingle as they walk throughout the pod. *Id.*

Due to the design of PBSP SHU, sounds in each pod/cell block are amplified and sound as if they are happening inside or in front of an inmate's cell, regardless of where the sound is generated.  Am. Compl. at 9.  During the relevant time period Plaintiff could clearly hear all the noise generated by the security/welfare checks, including the sound of the five other pod doors in his block slamming open and closed; the noise generated by the pipe being deployed in other pods; and the opening and closing of his block's front door.  *Id.*

Prior to the security/welfare checks, the pod door opened and closed thirteen to fourteen times within a 24-hour period, and only four of those times at night.  Am. Compl. at 10.  Since the security/welfare checks commenced, the pod doors open and close forty-eight times a day, and correctional officers ascend and descend the stairs forty-eight more times than before.  *Id.* at 9.

During the relevant time period, the "excessive and loud noise" created by the security/welfare checks lasted for ten to fifteen minutes every half hour, twenty-four hours a day, seven days a week.  Am. Compl. at 10.  The noise prevented Plaintiff from sleeping longer than thirty minutes, day or night, and caused him mental and physical suffering, including dizzy spells, severe headaches, body pains, depression, and stress.  Am. Compl. at 10.

Plaintiff has named as defendants the correctional officers who conducted the security/welfare checks in a manner that exacerbated the noise, such as by unnecessarily and intentionally hitting the metal disc harder than necessary, stomping up the stairs, letting their keys jingle loudly, flashing their flashlight in his face, and making the pod door open and close louder than normal.  Am. Compl. at 11–13.  Plaintiff has also named as defendants the correctional officers who reviewed and rejected his requests that the security/welfare checks cease.  *Id.* at 13–16.  Plaintiff seeks declaratory relief, injunctive relief, and damages.  *Id.* at 3 and 21.

## DISCUSSION

**I.     Request for Judicial Notice**

Defendants have requested that the Court take judicial notice of the existence and content

United States District Court
Northern District of California

of certain court documents and public records filed in *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.). Dkt. No. 29. Specifically, Defendants request the Court take judicial notice of the following filings pursuant to Rule 201(b)(2) of the Federal Rules of Evidence:

(1)      *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.), Order, July 12, 2013, ECF No. 4693;

(2)      *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.), Order, Oct. 10, 2013, ECF No. 4857;

(3)      *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.), Order, Special Master's Report, Jan. 14, 2015, ECF No. 5258;

(4)      *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.), L. Hayes Audit of Suicide Prevention Practices, ECF No. 5259;

(5)      *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.), Order, Dec. 28, 2015, ECF No. 5271;

(6)      *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.), Order, Apr. 29, 2016, ECF No. 5437; and

(7)      *Coleman v. Brown, et al.*, C No. 90-0520 LKK-DAD (E.D. Cal.), Order, Jun. 30, 2016, ECF No. 5467.

Pursuant to Federal Rule of Evidence 201(b)(2), a court may judicially notice a fact that is "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). To the extent the contents of these documents are in dispute, the Court declines to take judicial notice of these documents for the truth of the matter set forth in these documents. *In re Bare Escentuals, Inc. Sec. Lit.,* 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (in considering defendants' motion to dismiss, the court took judicial notice of the existence of unrelated court documents, but declined to take judicial notice of truth of the matters set forth in these unrelated court documents); *see also McMunigal v. Bloch,* No. C 10–02765 SI, 2010 WL 5399219, *2 n.1 (N.D. Cal. Dec. 23, 2010) (granting judicial notice of documents filed in another lawsuit for purposes of noticing the existence of the lawsuit, claims made in the lawsuit, and that various documents were filed, but not for the truth of the matters asserted therein). The Court GRANTS Defendants' request for judicial notice, and takes judicial notice of the existence of each document and the contents of

these documents to the extent that the content is not in dispute.

## II.      Motion to Dismiss

In their motion to dismiss, Defendants argue that because Plaintiff is no longer housed at PBSP SHU, he lacks standing to seek injunctive relief and his claims for declaratory or injunctive relief should therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Standing pertains to a federal court's subject-matter jurisdiction under Article III of the Constitution, and is therefore properly raised in a motion to dismiss under Rule 12(b)(1), not Rule 12(b)(6).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The Court therefore construes the motion to dismiss as raised pursuant to Rule 12(b)(1).

### A.      Standard

Pursuant to Rule 12(b)(1), a party may move to dismiss based on the court's lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Under Article III, Section 2 of the Constitution, this court's subject-matter jurisdiction is limited to deciding "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1; *see*, *e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984*), overruled on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1388 (2014).  "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  The "irreducible constitutional minimum" of Article III standing contains three elements: (1) the plaintiff must have suffered an "injury in fact;" (2) the injury is fairly traceable to the challenged action of the defendant(s); and (3) it is "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages, or civil penalties.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  To demonstrate Article III standing to seek injunctive relief, a plaintiff must demonstrate a

1    "real and immediate threat of repeated injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 103

2    (1983).  In the particular context of injunctive and declaratory relief, a plaintiff must show that he

3    has suffered or is threatened with a "concrete and particularized" legal harm, *Lujan*, 504 U.S. at

4    560, and "a sufficient likelihood that he will again be wronged in a similar way," *Lyons*, 461 U.S.

5    at 111.

6            The party asserting federal subject-matter jurisdiction bears the burden of proving its

7    existence.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  However, the

8    appropriate standard to apply in evaluating a Rule 12(b)(1) motion depends on the nature of the

9    jurisdictional challenge.  *See*, *e.g.*, *Crisp v. United States*, 966 F. Supp. 970, 971–72 (E.D. Cal.

10   1997) (listing three types of jurisdictional challenges: attacking the complaint on its face; attacking

11   the existence of subject-matter jurisdiction; and jurisdictional attack that involves the merits of the

12   complaint).  If the Rule 12(b)(1) motion attacks the complaint on its face, often referred to as a

13   "facial attack," the court considers the complaint's allegations to be true, and plaintiff enjoys

14           safeguards akin to those applied when a Rule 12(b)(6) motion is made.  The factual
        allegations made in the complaint are presumed to be true, and the motion is granted only
15      if the plaintiff does not set forth the elements necessary for subject matter jurisdiction.

16   *Doe v. Schachter*, 804 F. Supp. 53, 57 (N.D. Cal. 1992) (citation omitted).  If the Rule 12(b)(1)

17   motion challenges the truth of the jurisdictional facts underlying the complaint, often referred to as

18   a "factual attack," the court does not presume the factual allegations of the complaint to be true,

19   and the court may consider evidence presented with respect to the jurisdictional issue and rule on

20   that issue, resolving factual disputes if necessary.  *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,

21   594 F.2d 730, 733 (9th Cir. 1979).  There is a third type of jurisdictional motion, which involves

22   factual issues that address the merits of the complaint.  *Crisp*, 966 F. Supp. at 972.  In evaluating

23   this type of jurisdictional motion, the moving party should prevail only if the material

24   jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

25   *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Ondus.*, 813 F.2d 1553, 1557–58 (9th Cir. 1987)).

26           Here, Defendants have made a factual attack, alleging that Plaintiff lacks standing to seek

27   declaratory and injunctive relief related to the security/welfare checks in the PBSP SHU because

28   he is no longer housed at PBSP.  Accordingly, in evaluating the Rule 12(b)(1) motion, the Court

United States District Court
Northern District of California

6

1  does not presume the factual allegations of the complaint to be true and will resolve factual

2  disputes as necessary.  However, here, the relevant jurisdictional facts are undisputed.

3  Specifically, Plaintiff acknowledges that he is no longer housed at PBSP SHU.

**B.  Analysis**

5  Plaintiff is currently incarcerated at CSP–Solano, but his amended complaint concerns the

6  security/welfare checks conducted from August 2, 2015 to November 28, 2015 when he was

7  housed at PBSP SHU.  His amended complaint also specifies that the noise created by the

8  security/welfare checks is exacerbated by the unique design of the PBSP SHU.  Am. Compl. at 9.

9  Plaintiff seeks the following relief:  a declaratory judgment that Defendants' actions violated

10 Plaintiff's constitutional rights; injunctive relief requiring the cessation of the security/welfare

11 checks; and damages.  Defendants argue Plaintiff's requests for injunctive and declaratory relief

12 should be dismissed because Plaintiff lacks standing to seek injunctive and declaratory relief since

13 is no longer housed at PBSP SHU.  Dkt. No. 28 at 5–6.  Because Plaintiff is no longer housed at

14 PBSP SHU, argue Defendants, the injunctive and declaratory relief which Plaintiff seeks will not

15 remedy any continuing or prospective injury to Plaintiff.  *Id.*  Plaintiff argues that he has standing

16 to challenge the security/welfare checks because the security/welfare checks are still ongoing in

17 the SHU, and, because he is a validated prison gang associate, he can be reassigned to the SHU at

18 any time for minor or serious violations of prison rules pursuant to sections 3378.2(e)(2)(A)–(B)

19 and 3378.4(c)(1), (4), (5), and (6) of the California Code of Regulations, title 15.  Dkt. No. 35 at 3.

20 Plaintiff has failed to demonstrate a reasonable expectation or probability that he will be

21 housed in the PBSP SHU again.  Plaintiff's assertion that he is likely to be re-housed to PBSP

22 SHU relies on speculative contingencies.  Plaintiff would have to be transferred away from CSP–

23 Solano; he would have to be transferred to PBSP rather than to one of the many other prisons

24 within the CDCR system; and he would have to violate a prison rule.  Courts have consistently

25 found a lack of standing where the litigant's claim relies upon a chain of speculative

26 contingencies.  *Nelsen v. King Cnty.*, 895 F.2d 1248, 1252 (9th Cir. 1990) ("Both the Supreme

27 Court and our circuit have repeatedly found a lack of standing where the litigant's claim relies

28 upon a chain of speculative contingencies, particularly a chain that includes the violation of an

1    unchallenged law.").  Plaintiff's claim for injunctive relief should therefore be dismissed as moot

2    unless his claims fall within one of the three major exceptions to mootness.

3            The Ninth Circuit has recognized three major exceptions to mootness: (1) "wrongs capable

4    of repetition yet evading review," (2) "collateral legal consequences," and (3) "voluntary

5    cessation."  *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (recognizing

6    these three major exceptions to mootness doctrine).  Plaintiff has not demonstrated that his claims

7    fall within any of these exceptions.

8            A claim is "capable of repetition, yet evading review" when (1) the challenged action is of

9    limited duration, too short to be fully litigated prior to its cessation or expiration, and (2) there is a

10   reasonable expectation that the same complaining party will be subjected to the same action again.

11   *Porter v. Jones*, 319 F.3d 483, 489–90 (9th Cir. 2003).  This exception is not applicable because

12   the PBSP SHU security/welfare checks are not of limited duration; because the PBSP SHU

13   security/welfare checks are currently ongoing; and because, as discussed above, the possibility that

14   Plaintiff will be housed again in the PBSP SHU is too speculative to rise to the level of a

15   reasonable expectation.

16           Nor do the other two exceptions apply.  There is no allegation or indication that Plaintiff

17   would suffer collateral legal consequences, *see Pub. Util. Comm'n v. FRC*, 100 F.3d 1451, 1460

18   (9th Cir. 1996) (exception most commonly applied in habeas corpus proceedings where the

19   petitioner has subsequently obtained the relief sought; exception does not exist for the mere

20   possibility of continuing, present adverse effects), and there has been no voluntary cessation of the

21   security/welfare checks at PBSP SHU.

22           Plaintiff's claim for injunctive relief is therefore DISMISSED as moot.  *See Darring v.*

23   *Kincheloe*, 783 F.2d 874, 876–77 (9th Cir. 1986) (inmate's claim for injunctive relief should be

24   dismissed as moot when inmate transferred to another prison and no reasonable expectation or

25   demonstrated probability that inmate would again be subjected to conditions from which he seeks

26   injunctive relief); *cf. Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("An inmate's release

27   from prison while his claims are pending generally will moot any claims for injunctive relief

28   relating to the prison's policies unless the suit has been certified as a class action."); *see, e.g.,*

United States District Court
Northern District of California

*Bolton v. Holland*, No. 16-CV-00298-SK(OPC), 2017 WL 714375, at *8 (E.D. Cal. Feb. 22, 2017)

(dismissing prisoner's request for injunctive relief related to conditions of confinement at

California Correctional Institution because prisoner's transfer to Salinas Valley State Prison

rendered request moot; finding that prisoner's transfer to Salinas Valley State Prison deprived him

of standing to seek relief related to conditions at California Correctional Institution); *DeMonte v.

Griffith*, No. 16-CV-00116-LJO-SKO(PC), 2016 WL 7374588, at *6 (E.D. Cal. Dec. 19, 2016)

(finding that prisoner's requests for injunctive medical relief to remedy his conditions at Pleasant

Valley State Prison were rendered moot upon his transfer to Avenal State Prison); *Wiggins v.

Alameda Cnty. Bd. of Supervisors*, No. C 94-1172 VRW, 1994 WL 327180, at *2 n.1 (N.D. Cal.

June 22, 1994) (noting that prisoner lacked standing to seek injunctive relief related to prison

conditions at Alameda County Jail because he had been transferred to San Quentin State Prison).

Similarly, Plaintiff's claim for declaratory relief is also DISMISSED as moot.  *Cf. Alvarez v. Hill*,

667 F.3d 1061, 1064 (9th Cir. 2012) (inmate's release from prison while his claims are pending

generally will moot both claims for declaratory relief and injunctive relief relating to the prison's

policies).

### III.     Motion for Summary Judgment

In *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012), the Ninth Circuit held that a *pro se*

prisoner plaintiff must be provided with "fair notice" of the requirements for opposing a motion

for summary judgment, also known as a *Rand* notice, at the time the motion is brought.  Here,

Defendants did not provide Plaintiff with a *Rand* notice upon the filing of the motion for summary

judgment.  Rather, they provided Plaintiff with a *Rand* notice after Plaintiff had filed his

opposition to the summary judgment motion.  Since Defendants failed to provide Plaintiff with the

required notice, the summary judgment motion shall be dismissed without prejudice, subject to

refiling with the appropriate notice to Plaintiff.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's

claims for declaratory and injunctive relief are DISMISSED with prejudice.  Defendants' motion

for summary judgment is DISMISSED without prejudice, subject to refiling with the appropriate

*Rand* notice to Plaintiff.  Within seven days (7) days of the date of this order, Defendants shall refile their summary judgment motion, along with the appropriate *Rand* notice to Plaintiff.  Within twenty-one (21) days of the date of service of Defendants' refiled summary judgment motion, Plaintiff shall either file a new opposition/response in accordance with Rule 56 of the Federal Rules of Civil Procedure, or a notice that he desires to stand on the opposition he previously filed (Dkt. No. 35).

This order terminates Docket No. 28.

**IT IS SO ORDERED.**

Dated:  6/20/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge