UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHER CONRAD SUAREZ,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY BEARD, et al.,<br><br>Defendants. | No. 2:18-cv-0340 KJM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that use of the Guard One security check system caused him sleep deprivation in violation of the Eighth Amendment. Before the court are defendants' motion to dismiss, defendants' motion to stay these proceedings, and plaintiff's motion to substitute a party. For the reasons set forth below, this court will recommend: (1) the motion to dismiss be granted in part, denied in part, and stayed in part; (2) the motion to stay be granted; and (3) the motion to substitute a party be denied without prejudice.

## BACKGROUND

**I.      Plaintiff's Allegations**

This case is proceeding on plaintiff's second amended complaint ("SAC") filed November 17, 2017. (ECF No. 53.) Plaintiff alleges that starting in August 2015 when he was incarcerated in the Security Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP") he was subjected to

1

frequent security checks that caused loud sounds which prevented him from sleeping. The security checks were implemented through the Guard One system, which requires officers to strike a metal plate on each cell door in the SHU with a metal pipe. The metal pipe has an electronic sensor that records each such contact. Plaintiff identifies numerous defendants who he classifies into three groups: PBSP floor officers, PBSP high-level officers, and state-level officers employed by the California Department of Corrections and Rehabilitation ("CDCR"). The court refers to those groups herein as the floor officer defendants, the appeals review defendants, and the high-level supervisory defendants.[1]

In December 2015, plaintiff was transferred out of PBSP. Since then, plaintiff has not been subjected to Guard One checks. Plaintiff seeks injunctive and declaratory relief and damages.

**II.     Procedural Background**

Plaintiff initiated this action in pro per by filing a complaint in 2015 in the Northern District of California. In October 2016, defendants filed a motion to dismiss and for summary judgment and moved for a stay of these proceedings pending resolution of the motion. (ECF Nos. 28-30.) The court granted a stay and denied the motion to dismiss/for summary judgment without prejudice. (ECF Nos. 33, 38.) In June 2017, defendants filed a second motion for summary judgment. (ECF No. 39.) That motion was also denied without prejudice. (ECF No. 51.) In addition, on September 19, 2017, the judge stayed discovery "pending the determination of whether the cases will remain in NDCA." (Id.)

---

[1] This court used these categories when distinguishing defendants in the related cases challenging the use of the Guard One system. Plaintiff states that these categories are applicable in this case as well. (See ECF No. 86 at 2 n.1-3.) However, a review of plaintiff's SAC shows that several of the defendants identified by plaintiff in the SAC as falling within his second category of "PBSP high-level officers" did not review plaintiff's prison appeals so should not be categorized as "appeals review defendants." Rather, plaintiff appears to allege that several of these officers bear responsibility solely for failing to supervise or train the floor officers. (See SAC (ECF No. 53) ¶¶ 134 (re defendant Bell), 136 (Parry), 137 (Molina, Northrup, Drowner, and Drayton).) They may, thus, be better classified along with the floor officer defendants as those defendants directly responsible for the day-to-day implementation of the Guard One system. In any event, because this court finds plaintiff's claims against the appeals review defendants and against the floor officer defendants should be similarly addressed at this time, the classification of these few defendants is not critical now.

2

In 2017, the court appointed counsel for plaintiff. Plaintiff filed his SAC on November 17, 2017. (ECF No. 53.)

On January 3, 2018, defendants filed a motion to dismiss the SAC. (ECF No. 58.) Defendants argue that plaintiff's action is precluded because the Guard One system was required in the PBSP SHU by an order issued by Judge Mueller in the class action <u>Coleman v. Newsom</u>, No. 2:90-cv-0520 KJM DB P (E.D. Cal.). Shortly after the parties argued the motion in the Northern District, the judge transferred the case to the Eastern District. In March 2018, this case was related to <u>Coleman</u> and to another case involving use of the Guard One system in the California prisons. Since then, several other cases challenging use of the Guard One system have been related to <u>Coleman</u> as well.

From September 2018 through June 2019, the parties conducted some discovery. (<u>See</u> Bajwa Decl. (ECF No. 90-1), ¶¶ 4-6.)

In March 2019, Judge Mueller granted in part and denied in part the defendants' motion to dismiss in <u>Rico v. Beard</u>, No. 2:17-cv-1402 KJM DB P (E.D. Cal.). She dismissed plaintiff's claims for injunctive and declaratory relief because he was no longer housed in the SHU or Administrative Segregation Unit ("ASU") where Guard One checks were used. Judge Mueller held that the Guard One system was not, on its face, unconstitutional. On that basis, she distinguished the high-level supervisory defendants, who only bore responsibility for instituting the Guard One system as required by the order in <u>Coleman</u>, and the other two categories of defendants, who were responsible for the day-to-day implementation of the Guard One system. Judge Mueller dismissed the high-level supervisory defendants because they are protected by qualified immunity. She held that the appeals review defendants and floor officer defendants were not so protected.

At this court's request, the parties filed briefs regarding the effects of Judge Mueller's decision in <u>Rico</u> on defendants' motion to dismiss in the present case. (ECF Nos. 85, 86, 87.) When the <u>Rico</u> defendants filed an interlocutory appeal of Judge Mueller's order, this court ordered the parties to state their positions on a stay of these proceedings pending the Ninth

////

Circuit's decision on the qualified immunity issues in Rico.[2] Shortly thereafter, defendants filed a motion for a stay. (ECF No. 90.) Plaintiff opposes a stay. (ECF No. 92.)

Most recently, on July 22, 2019, plaintiff filed a motion to substitute a recently deceased defendant with the administrator of her estate. (ECF No. 95.) Defendants have not opposed that motion.

**DISCUSSION**

Initially, this court must determine whether to reach any of the issues raised by the motion to dismiss or whether to solely address the motion to stay pending an appellate decision in Rico. The issues raised by the Rico defendants in their interlocutory appeal are whether the appeals review defendants and floor officer defendants in that case are entitled to qualified immunity. Therefore, to the extent this action should be stayed, it need only be stayed with respect to the proceedings on those issues. In their motion to dismiss, defendants raise additional issues. In addition to qualified immunity for appeals review defendants and floor officer defendants, they argue: (1) the high-level supervisory defendants are protected by qualified immunity; (2) plaintiff's claims are precluded by principles of judicial comity; and (3) the court should decline to exercise supplemental jurisdiction over the state law claims. While raised indirectly in their reply, defendants also contend plaintiff no longer has standing to seek injunctive or declaratory relief.

As discussed below, this court finds the best course at this juncture is a stay of proceedings on the claims potentially affected by the pending interlocutory appeal in Rico and resolution of the remaining issues raised by defendants' motion to dismiss.

**I.    Motion to Dismiss**

In the following section, this court addresses a stay of these proceedings on the issues likely affected by the Rico appeal. Because the court will recommend a stay on the claims affected by those issues, in this section, the court addresses defendants' motion to dismiss on the grounds that will be unaffected by the Rico appeal.

---

[2] The Rico appeal is Ninth Circuit No. 19-15541.

4

### A. Standard of Review on Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept as true the allegations of the complaint, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

### B. Analysis

#### 1. Qualified Immunity

As explained above, the court considers here the issue of qualified immunity for just one class of defendants – the high level supervisory defendants. Plaintiff identifies those defendants as: (1) Voong, Chief of the Office of Appeals; (2) T. Lee, Appeals Examiner in the Office of Appeals at CDCR; (3) Stainer, Assistant Director and Director of Adult Institutions at CDCR from 2013 to 2014; (4) Harrington, Direction of the Division of Adult Institutions from 2014 to March 2016; (5) Allison, Director of the Division of Adult Institutions at CDCR since April 2016; (6) Beard, Secretary of CDCR from December 2012 through December 2015; and (7)

////

Kernan, Secretary of CDCR since January 2016. (See ECF No. 86 at 2 n. 3; ECF No. 53 at 8, ¶¶ 82-88.)

In Rico, the court held that the high level supervisory defendants, most of whom are the same as those identified here, were entitled to qualified immunity because they did nothing more than carry out a facially valid order by instituting the Guard One system. Rico, No. 2:17-cv-1402 KJM DB P (Order filed Mar. 5, 2019 (ECF No. 102) at 3). Plaintiff argues that his allegations against the high level supervisory defendants in this case are distinguishable from those in Rico. He argues that he has plead these defendants were involved in not only the initial institution of the Guard One system, but that they had knowledge that its use was causing sleep deprivation. However, plaintiff fails to support that statement with respect to all of these defendants.

First, the court notes that defendants Voong and T. Lee, while working at the state-wide CDCR level, are more aptly described as appeals review defendants because plaintiff alleges they personally reviewed his grievances. Therefore, Voong and T. Lee's entitlement to qualified immunity is an issue very likely to be affected by the Ninth Circuit's decision in Rico. This court recommends that issue be stayed pending the Rico appeal.

Second, plaintiff makes no allegations of actual knowledge regarding the day-to-day implementation and use of the Guard One system at the PBSP SHU against Stainer, Harrington, Allison, and Kernan. In Rico, for the same reason, the court held that these four defendants are entitled to qualified immunity. (ECF No. 102 at 3.) This court can detect no distinction between the allegations in Rico and the allegations against these four defendants in the present case that would dictate a different result. Accordingly, this court recommends defendants Stainer, Harrington, Allison, and Kernan be dismissed from this action.

With respect to defendant Beard, plaintiff points to an allegation in his SAC that he wrote directly to defendant Beard in September 2015 and "inform[ed] him of the sleep deprivation caused by the Guard One checks." (ECF No. 53 at 23, ¶ 155.) At the motion to dismiss stage, this court must accept as true the allegations of plaintiff's complaint. His allegations show that Beard's actions or inaction went beyond simple institution of the court's order in Coleman. If plaintiff can prove Beard had knowledge of the sleep deprivation plaintiff suffered by the use of

the Guard One checks and plaintiff can show Beard failed to take action to address the problem, plaintiff may be able to prove that defendant Beard violated his Eighth Amendment rights. Like the appeals review defendants, Beard's entitlement to qualified immunity is an issue that may be affected by the Ninth Circuit's decision in Rico. The court should decline to address it at this time.

### 2. Does Coleman have a Preclusive Effect on Plaintiff's Claims?

Defendants first argue that plaintiff's claims are preluded by principles of judicial comity. According to defendants, because the Guard One checks were instituted pursuant to an order issued in the Coleman case, the court may not issue an order in the present case that would have the effect of voiding a Coleman order. However, defendants' argument is premised on the assumption that all defendants were "merely implement[ing] the *Coleman* court's orders." (ECF No. 53 at 12.) That is not what plaintiff alleges.

As discussed above, to the extent some defendants were only involved in the initial institution of the Coleman order, they should be protected by qualified immunity. However, to the extent plaintiff challenges the specific way in which other defendants chose to utilize the Guard One procedures, those claims fall beyond the scope of the Coleman order. Accordingly, the court finds defendants' preclusion argument provides no grounds for dismissal.

### 3. Supplemental Jurisdiction over State Law Claims

Defendants' argument here is simply based on the rule that a federal court typically will not exercise jurisdiction over pendent state law claims where the federal claims have been dismissed. See 28 U.S.C. § 1367. Because this court does not recommend dismissal of all of plaintiff's federal law claims, there is no basis upon which to recommend dismissal of the state law claims at this time.

### 4. Injunctive and Declaratory Relief

Plaintiff argued in his opposition to the motion to dismiss that his claims for injunctive relief survive any assertion of qualified immunity. (ECF No. 59 at 10.) In their reply brief, defendants argued that plaintiff has no standing to seek injunctive relief because he is no longer incarcerated at PBSP. (ECF No. 61 at 9-10.) The parties again argued about the status of

plaintiff's claims for injunctive relief in their briefing on the effect of the district court's decision in Rico (see ECF Nos. 85 at 2, 86 at 11-14, and 87 at 2-3) and in their briefing on the pending motion for a stay (see ECF Nos. 90 at 2, 92 at 8, and 94 at 4). While defendants did not raise the status of injunctive and declaratory relief properly in their motion to dismiss, this court finds the parties have had ample opportunity to brief the issue and, particularly because it is relevant to plaintiff's arguments regarding the propriety of a stay, this court finds it should be addressed at this time.

Judge Mueller considered the viability of claims for injunctive and declaratory relief in Rico. In that case, as in the present one, the plaintiff was no longer being subjected to the Guard One checks. Judge Mueller found that plaintiff Rico did not meet either of the two exceptions to the mootness doctrine: (1) defendants voluntarily ceased the challenged activity in response to the litigation; and (2) the challenged action is capable of repetition but evades review. First, defendants "did not unilaterally cease their illegal activity in response to the instant litigation when they released plaintiff from the SHU after his SHU term expired." Second, Judge Mueller held that plaintiff had met "his burden of showing a reasonable expectation he will be reincarcerated in either the SHU or the ASU [Administrative Segregation Unit] for non-punitive reasons." (ECF No. 102 at 9-10.)

Plaintiff here argues that his case is factually distinct from Rico's. He focuses on the court's recognition that the "'capable of repetition' prong cannot be satisfied by a reasonable expectation that plaintiff will commit future misconduct." (See ECF No. 102 at 10.) Plaintiff argues that, unlike Rico, he can show he has been assigned to the ASU even when he has committed no misconduct. He points to an incident in which he was placed in the ASU after being charged with possession of a weapon. Upon adjudication, he was found not guilty.

In making this argument, plaintiff ignores the fact that to satisfy the mootness exception he must have a "reasonable expectation" that he will be reincarcerated in the PBSP SHU or ASU. The fact that plaintiff was once incarcerated in the ASU for reasons other than misconduct hardly amounts to a showing that he has a reasonable expectation of being incarcerated there in the future. This is particularly true because plaintiff is no longer incarcerated at PBSP. Therefore, if

8

he is placed in the SHU or ASU in a different prison, there is no reason to expect he will be subjected to the same alleged misuses of the Guard One system complained of in the present case.[3]

### C. Conclusion re Motion to Dismiss

This court will recommend that defendants' motion to dismiss be granted in part, denied in part, and stayed in part as follows: (1) high level supervisory defendants Stainer, Harrington, Allison, and Kernan should be dismissed because they are protected from this suit by qualified immunity; (2) plaintiff's claims for injunctive and declaratory relief should be dismissed as moot; (3) defendants' argument that this action is precluded by Coleman should be rejected; and (4) defendants' contention that the state law claims should be dismissed should be rejected without prejudice.

### II. Motion for Stay

Defendants move to stay these proceedings. They argue the Ninth Circuit's opinion in Rico will affect the analysis of qualified immunity issues in this case for the appeals review defendants and floor officer defendants. Therefore, defendants argue, a stay is necessary to avoid the potentially unnecessary time and expense of discovery and other pretrial preparations.[4] Plaintiff argues that this case should proceed because his claims for injunctive relief and his state law claims will not be affected by the Ninth Circuit's decision on qualified immunity. Plaintiff further argues he will be prejudiced if discovery is delayed.

////

---

[3] As stated above, to the extent plaintiff alleges use of the Guard One system as intended violated his Eighth Amendment rights, defendants are entitled to qualified immunity because use of the Guard One system was required by a court order in Coleman. Therefore, plaintiff's only actionable claims in this case are those alleging misuse of the Guard One system.

[4] Defendants also argue that the order staying discovery issued in 2016 remains in effect. If that is the case, defendants' motion would be largely pointless. Plaintiff contends the stay order is no longer effective because, by its terms, it ended when defendants' motion for summary judgment was denied. A review of the order entering the stay shows that plaintiff is correct. The stay expired when defendants' 2016 motion for summary judgment was denied. (See ECF Nos. 33, 38, 51.) Further, the judge in the Northern District issued a second stay of discovery by minute order on September 19, 2017. (ECF No. 51.) That stay, by its terms, expired when the court determined this case should be transferred to the Eastern District.

**A. Legal Standards**

"District courts have inherent authority to stay proceedings before them." Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 817 (9th Cir. 2003), abrogated on other grounds by Ryan v. Gonzales, 568 U.S. 57 (2013). The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). Further, every court has the power "to manage the cases on its docket and to ensure a fair and efficient adjudication of the matter at hand." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citing Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1077 (3d Cir. 1983)). The decision whether to stay a civil action is left to the sound discretion of the district court. Rohan, 334 F.3d at 817.

To determine whether a stay is appropriate, the court looks to the following standards:

> "Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

**B. Analysis**

**1. Orderly Course of Justice**

Initially, this court considers the potential effect of a ruling in Rico. If plaintiff is correct and the cases have distinctions that would affect the qualified immunity analysis, then a decision in Rico may not have a significant impact on the proceedings in the present case. With respect to the appeals review defendants, this court described Rico's allegations against those defendants as follows:

> In this case, plaintiff alleged that these [appeals review] defendants knew about his sleep problems from reviewing his grievances and had supervisory authority over the officers conducting the Guard One

> checks. However, they failed to address the problems or appropriately train the officers. (SAC (ECF No. 38) ¶¶ 48-52.) These allegations show that the appeals review defendants were aware of the continuing problem, knew it was causing plaintiff severe sleep deprivation, had the authority to take action to remedy the problem, and failed to do so.

Rico, No. 2:17-cv-1402 KJM DB P (Aug. 2, 2018 Findings and Recos. (ECF No. 86) at 19). In the present case, plaintiff Suarez's allegations against the appeals review defendants are, essentially, the same. Plaintiff alleges they were informed of his complaints of sleep deprivation because they reviewed his grievances. (SAC (ECF No. 53) ¶¶ 121-125, 127-129.) However, they failed to take action to address the problem.

There are also significant similarities in the allegations regarding the floor officer defendants in each case. Rico alleged they conducted the Guard One checks in an unnecessarily noisy manner. Rico, No. 2:17-cv-1402 KJM DB P (ECF No. 86 at 20). In the present case, plaintiff also alleges that each floor officer "conducted Guard One checks in Suarez's unit and made more noise than necessary, including by hitting the Guard One button harder than necessary and/or hitting it repeatedly." (SAC (ECF No. 53) ¶ 132.) Finally, both plaintiff and Rico allege that their Eighth Amendment rights were violated while housed in the SHU at PBSP in the latter half of 2015.[5]

The qualified immunity issue presented by the Rico defendants in their appeal is whether these appeals review and floor officer defendants should have reasonably understood that their conduct violated plaintiff's clearly established constitutional rights. Because the conduct alleged in each case is extremely similar, and plaintiff does not show otherwise, this court finds the Ninth Circuit's decision on the qualified immunity issues raised in Rico will very likely have a significant impact on the resolution of the qualified immunity issues in the present case. And,

////

////

---

[5] While plaintiff here was released from PBSP in December 2015, Rico remained incarcerated in the PBSP SHU from August 2015, when the Guard One checks were started, until August 2016, when he was transferred out the SHU.

11

because plaintiff's remaining claims are only claims for damages,[6] should any defendant or class of defendants be found to be protected by qualified immunity, plaintiff's claims against them should be dismissed.

Therefore, considerations of the orderly course of justice weigh in favor of granting a stay. If the Ninth Circuit rules in Rico that the appeals review and floor officer defendants are protected by qualified immunity, it is likely that decision will require a similar determination in this case. If that is so, plaintiff's federal claims will be dismissed and this court is not likely to retain jurisdiction over the supplemental state law claims. See 28 U.S.C. § 1367(c)(3); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994) ("[I]n the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." (Internal citation marks omitted; emphasis in original.)). Further, if this case is not stayed, both parties will have spent time and resources unnecessarily and the court's limited resources may have been spent on issues that need not have been resolved. This court finds the orderly administration of justice would be best served by granting a stay.

**2. Possible Harm from a Stay**

Defendants contend a stay will not significantly prejudice plaintiff. They argue that plaintiff has already received many documents in discovery. They also pledge to preserve other relevant evidence. Plaintiff argues that his case has been pending since 2016 and he has conducted very little discovery. He points out that a large percentage of the documents defendants provided were plaintiff's central and medical files. He further argues that he has taken no depositions and raises the concern that witnesses' memories will fade during the "several year" pendency of the Rico appeal.

This court recognizes that a delay in discovery could cause some memories to fade. However, plaintiff provides no specific information about just what discovery he will seek that

---

[6] As discussed in the prior section, this court recommends plaintiff's claims for injunctive and declaratory relief be dismissed as moot. Therefore, this court need not consider plaintiff's arguments that this case should not be stayed because the Rico appeal will not affect his claims for injunctive relief.

12

depends upon memory.  Further, plaintiff now seeks only money damages in his suit and courts have held that the delayed reception of ordinary money damages is not the type of potential damage that courts consider weighty when considering a stay.  See I.K. ex rel. E.K. v. Sylvan Union Sch. Dist., 681 F. Supp. 2d 1179, 1191 (E.D. Cal. 2010) (citing Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005)).

### 3. Possible Hardship if Case Proceeds

Defendants argue that being forced to respond to extensive discovery for the many defendants[7] named in this action will be extremely burdensome.  There is no question that is true. Moreover, as noted by the Supreme Court, the purpose of qualified immunity is "not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery . . . , as [i]nquiries of this kind can be peculiarly disruptive of effective government.'"  Behrens v. Pelletier, 516 U.S. 299, 308 (1996) (quoting Mitchell, 472 U.S. at 526) (some internal quotations marks omitted).  Courts in this and other circuits have recognized that pretrial proceedings on the merits of a claim should be delayed until the qualified immunity issue is resolved.  See Dahlia v. Stehr, 491 F. App'x 799, 801 (9th Cir. 2012) ("[A] denial of summary judgment without prejudice is sufficiently final to support jurisdiction over an interlocutory appeal . . . because the purpose of qualified immunity is 'not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery.'" (quoting Behrens, 516 U.S. at 308)); Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (recognizing the importance of resolving qualified immunity issue early in the case because such immunity permits government officials to avoid the burdens of pretrial matters such as discovery); Ganwich v. Knapp, 319 F.3d 1115, 1119 (9th Cir. 2003) (same); Holloway v.City of Pasadena, No. 2:15-cv-3867-CAS(JCx), 2016 WL 11522304, at *2 (C.D. Cal. Mar. 14, 2016) (same); Congdon v. Lenke, No. CIV 08-1065RJB, 2010 WL 489677, at *8 (E.D. Cal. Feb. 5, 2010) (same); Wolfenbarger v. Black, No. CIV S-03-2417 MCE EFB P,

---

[7] As discussed above, this court recommends four of the high level supervisory defendants - Stainer, Harrington, Allison, and Kernan – be dismissed from this action.  The remaining defendants in this action are then high-level supervisory defendant Beard, fifteen appeals review defendants (see SAC (ECF No. 53) ¶¶ 69-83) and fifty-nine floor officer defendants (see id. ¶¶ 9-67).

13

2008 WL 590477, at *2 (E.D. Cal. Feb. 29, 2008) (district court should resolve immunity issue before allowing discovery), rep. and reco. adopted, 2008 WL 838721 (E.D. Cal. Mar. 28, 2008); see also District of Columbia v. Trump, 930 F.3d 209 (4th Cir. 2019) (an entitlement to immunity is an entitlement "'not to stand trial or face the other burdens of litigation'" (quoting Mitchell, 472 U.S. at 526)); Oliver v. Roquet, 858 F.3d 180, 188 (3rd Cir. 2017) ("'[A] defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" (quoting Mitchell, 472 U.S. at 526)); Marksmeier v. Davis, 622 F.3d 896, 903 (8th Cir. 2010) (same); Barron v. Livingston, 42 F. App'x 793, 794 (6th Cir. 2002) ("Qualified immunity provides government officials the right to avoid the pre-trial burden of discovery." (citing Behrens, 516 U.S. at 314)). Therefore, given the Rico decision's likely impact on the qualified immunity issues here, defendants should not be faced with extensive discovery burdens which may ultimately have been unnecessary.

### 4. Conclusion re Motion to Stay

This court will recommend that defendants' motion to stay be granted with respect to all pre-trial proceedings, including resolution of the qualified immunity arguments in defendants' motion to dismiss, regarding plaintiff's claims against the appeals review defendants, which includes defendants Voong and T. Lee, against the floor officer defendants, and against defendant Beard.

**MOTION TO SUBSTITUTE PARTY**

On July 2, 2019, defendants filed a suggestion of death, notifying the court that defendant Melton died in April. (ECF No. 91.) On July 22, plaintiff filed a motion to substitute the administrator of defendant Melton's estate for defendant Melton. (ECF No. 95.) Plaintiff served a copy of the motion on the administrator of Melton's estate identified by defendants in their suggestion of death. (Id. at 3.) Neither defendants nor the administrator of Melton's estate have opposed the motion.

Under 42 U.S.C. § 1988(a), the law of the forum state determines whether a section 1983 action survives or is extinguished upon the death of a party. See Robertson v. Wegmann, 436 U.S. 584, 592-95 (1978); Hightower v. Birdsong, No. 15-cv-3966-YGR(PR), 2017 WL 3782691,

at *2 (N.D. Cal. Aug. 31, 2017). In California, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period. Cal. Code Civ. Proc. § 377.20(a). Accordingly, the court may order substitution of a "proper party" to stand in the place of the deceased defendant. Rule 25(a)(1); Sinito v. U.S. Dep't of Justice, 176 F.3d 512, 516 (D.C. Cir. 1999).

There is some question whether plaintiff must comply with the claim presentation requirements of the California Probate Code before the court will permit substitution. Civil Code § 377.40 states:

> Subject to Part 4 (commencing with Section 9000) of Division 7 of the Probate Code governing creditor claims, a cause of action against a decedent that survives may be asserted against the decedent's personal representative or, to the extent provided by statute, against the decedent's successor in interest.

Probate Code § 9370 requires presentation of a claim prior to substitution:

> (a) An action or proceeding pending against the decedent at the time of death may not be continued against the decedent's personal representative unless all of the following conditions are satisfied:
>
> (1) A claim is first filed as provided in this part.
>
> (2) The claim is rejected in whole or in part.
>
> (3) Within three months after the notice of rejection is given, the plaintiff applies to the court in which the action or proceeding is pending for an order to substitute the personal representative in the action or proceeding. This paragraph applies only if the notice of rejection contains a statement that the plaintiff has three months within which to apply for an order for substitution.
>
> (b) No recovery shall be allowed in the action against property in the decedent's estate unless proof is made of compliance with this section.

Some courts have required compliance with this claims presentation requirement prior to substitution. See Martinez v. Patton, No. 18-cv-3480-JCS, 2019 WL 3997484, at *4-5 (N.D. Cal. Aug. 23, 2019); Hightower, 2017 WL 3782691, at *2-3; see also Hightower v. Birdsong, No. 15-cv-3966-YGR(PR), 2018 WL 4005374, at *3 (N.D. Cal. Aug. 17, 2018) ("Plaintiff **must comply** with the claims presentation requirements of the California Probate Code if he wants to pursue this [§ 1983] action against Defendant's personal representative." (Emphasis in original.).) Other

15

courts do not appear to have imposed such a requirement. See <u>Akhtar v. Mesa</u>, No. 2:09-cv-2733 MCE AC P, 2013 WL 3199074, at *3 (E.D. Cal. June 21, 2013) (substitution permitted without mention of the claims presentation requirement).

A plain reading of the applicable law provides that plaintiff must comply with the claims presentation requirement before the court may substitute the administrator of defendant Melton's estate for defendant Melton. See Cal. Prob. Code § 9370 ("An action . . . pending against the decedent at the time of death <u>may not be continued</u> against the decedent's personal representative" until the claims presentation requirement is satisfied. (Emphasis added.).) Because there is no indication plaintiff has satisfied the claims presentation requirement, this court will recommend plaintiff's motion to substitute be denied without prejudice to its renewal when plaintiff has done so.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED as follows:

1. Defendants' motion to dismiss (ECF No. 58) be granted in part, denied in part, and stayed in part.
    a. Defendants' motion to dismiss defendants Stainer, Harrington, Allison, and Kernan because they are protected from this suit by qualified immunity be granted;
    b. Defendants' motion to dismiss plaintiff's claims for injunctive and declaratory relief as moot be granted;
    c. Defendants' motion to dismiss all claims as precluded <u>Coleman</u> be rejected;
    d. Defendants' motion to dismiss the state law claims be rejected without prejudice; and
    e. Consideration of defendants' motion to dismiss the appeals review defendants, including defendants Voong and T. Lee, the floor officer defendants, and defendant Beard be stayed pending the Ninth Circuit's resolution of the defendants' interlocutory appeal in <u>Rico v. Beard</u>, Ninth Circuit No. 19-15541.

////

////

2. Defendants' motion to stay these proceedings (ECF No. 90) pending the Ninth Circuit's resolution of the defendants' interlocutory appeal in Rico v. Beard, Ninth Circuit No. 19-15541, be granted.

3. Plaintiff's motion to substitute a party (ECF No. 95) be denied without prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 19, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/suar0340.mtd stay.fr